## BROOKINGS STATE BANK v. FEDERAL RESERVE BANK OF SAN FRANCISCO.

(District Court, D. Oregon. December 19, 1921.)

No. E–8577.

Banks and banking &#10148;288½, New, vol. 11A Key-No. Series—Federal Reserve Bank held without authority to require nonmember bank to remit without charging exchange.

    A state bank, not a member of the Federal Reserve Bank, *held* entitled to charge its customary exchange on remittances to the reserve bank of the district, and a practice of the reserve bank to send checks on the state bank received by it for collection to the drawee bank indorsed "for collection only and remittance in full without deduction for exchange," and on their return unpaid to return them to its correspondents, advising them in effect that the checks were dishonored, *held* unauthorized, and enjoined, where it appeared that such practice was adopted for the purpose of coercing the state bank.

In Equity. Suit by the Brookings State Bank against the Federal Reserve Bank of San Francisco. On motion for preliminary injunction. Granted.

T. T. Bennett and B. Swanton, both of Marshfield, Or., for plaintiff.

Gavin McNab, of San Francisco, Cal., Wood, Montague & Matthiessen, of Portland, Or., and Albert C. Agnew, of San Francisco, Cal., for defendant.

WOLVERTON, District Judge. This is a suit for an injunction to restrain defendant from indulging in certain alleged practices supposedly injurious to plaintiff's business.

&#10148;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Brookings State Bank is a banking institution organized under the laws of the state of Oregon, with a capital stock of $15,000, having its principal place of business at Brookings, a small town in the south-western part of Curry county, in the state. The Federal Reserve Bank is a corporation organized under the laws of the United States, and a branch of the Federal Reserve system. The State Bank has correspondents at Portland, Or., and San Francisco, Cal., where it maintains funds subject to being drawn upon by it by check or draft, to meet remittances by exchange. In making remittances, the Brookings Bank has heretofore exacted a charge of one-tenth of 1 per cent. rate of exchange.

It is alleged that the defendant has heretofore demanded of plaintiff that it remit at par in all cases where defendant is acting as a collection agency, and, the plaintiff having refused so to remit at par, that defendant has resorted to the supposed expedient of maintaining an agent at Brookings for the purpose of presenting and demanding the payment of checks and drafts drawn on the bank over the counter and shipping the money to the defendant bank, which was done at great expense to the defendant bank, but for the purpose of harassing and annoying plaintiff and coercing it to subscribe to defendant's policy of remitting at par.

It appears from the affidavits of persons, filed in the cause on hearing for preliminary injunction, that on October 1, 1921, the agent was withdrawn from Brookings, and the State Bank was notified by defendant bank that thereafter checks received by the defendant bank for collection against the Brookings State Bank would be forwarded to it by mail, with request that the check be paid at par and the proceeds remitted by exchange on Portland or San Francisco. Checks were so forwarded, but were returned without payment as requested, upon the ground that plaintiff was not called upon to act as agent for the Reserve Bank for the collection of the checks under the terms imposed. On the return of the checks, the defendant bank has returned them to its correspondents, advising them in effect that the State Bank refused to pay, and had not protested the same, and that they must look to the State Bank for their protection. In sending the checks to the Brookings Bank, the defendant bank caused them to be indorsed as follows:

"Pay to Brookings State Bank for collection only and remittance in full without deduction for exchange or collection charges. Portland Branch, Federal Reserve Bank of San Francisco, Frederick Greenwood, Manager."

It can hardly be disputed that the Brookings State Bank has the right, if it so desires, to charge a reasonable rate of exchange for its remittances. Although there may exist a custom by which banks make remittances without the exaction of exchange, it is not universal, for the record shows that a number of small banks in Oregon and Washington are still charging exchange on remittances. See affidavit of Charles F. Adams. The custom does not affect the right of the banks to adhere to their practice of charging exchange on remittances.

A custom prevails, which is practically universal in the state of Oregon, whereby checks upon out of town banks are received by Portland banks and paid or credited to the account of the person presenting

the same to transmit such checks by mail to the drawee bank for payment (where there is no other bank in the same town with the drawee bank), and it is universally regarded and treated by banks that such presentment by mail is a regular, customary, and proper method of presentment for payment, and refusal of payment is generally treated as dishonor. The sending bank, in such cases, customarily and regularly notifies the prior parties that the check is dishonored. And I might say that it is further averred that it is the prevailing custom at the present time in the state of Oregon for checks so presented to be paid by the drawee bank without deducting any charge for making payment. See affidavits of Charles F. Adams and others.

Such a custom, as we are persuaded and again assert, does not affect the right of the drawee bank to charge an exchange for making remittances. Now, the conditions are these: The Federal Reserve Banks are inhibited from making any charge for exchange against other Federal Reserve Banks. Section 13 as amended, Act June 21, 1917 (40 Stat. 232, 234; Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9796).

The opinion of Attorney General Gregory clarifies the clause alluded to. by language following:

"'No such charges shall be made against the Federal Reserve Banks' may be construed not as directed against state banks which are not depositors but merely as specifying a condition upon which checks may clear through the Federal Reserve Banks—in effect a prohibition against the payment of such charges by the Federal Reserve Banks." Vol. 31, Opinions of Attorneys General, 245, 248, 249.

The act, however, does not inhibit Federal Reserve Banks from expending money in making collections by other methods from banks not members of the Federal Reserve system. American Bank & Trust Co. v. Federal Reserve Bank (C. C. A.) 269 Fed. 4.

The defendant, therefore, was acting within its authority in maintaining an agent at Brookings, for making collections over the counter of plaintiff's bank and paying the expenses entailed thereby.

While, under the prevailing custom, the defendant bank could rightfully remit checks and drafts drawn against the plaintiff bank direct to the latter for collection, and could thereby exact payment of them, it could not impose conditions upon which such payment should be made; much less could it make the plaintiff bank its agent for causing protest to be made for nonpayment. The idea of requiring that a maker or drawee shall have protested his own paper is so inconsistent with the functions of an agent that it can hardly receive the sanction of law. No man can serve two masters, especially himself and another, in inconsistent capacities. I am persuaded, therefore, that the defendant was at fault in two particulars: First, in attempting to impose the condition that the plaintiff bank pay without its charge for exchange; and, second, in attempting to hold the plaintiff bank responsible for not having its own paper protested for nonpayment.

The question remains for determination as it respects the motive that induced the defendant bank to pursue the course it did in attempting to make collection from the plaintiff bank. It appears by defendant's answer that it expended $1,915.32 in making collections, over the coun-

ter of plaintiff's bank, of $102,850.33, during the year from October 1, 1920, to October 1, 1921. The method employed, considering the occasion for it, or rather the lack of reasonable necessity, was, to say the least, extraordinary, extravagant, and unbusinesslike.

In view of the fact that the defendant bank demanded payment of the Brookings Bank on condition that it remit at par, the refusal so to remit was not an act of dishonor as affecting the paper. Nor was the defendant authorized to advise its clients that they must look to the plaintiff bank for their protection through failure to protest. The defendant has sent out many letters to its clients containing advice of the kind. It does not appear that it has wholly desisted from the practice, although it has written to some of its clients that:

"The attitude taken by the Brookings State Bank makes it impossible for us to accept for collection further, items drawn upon that bank."

I am persuaded, however, that the action of the defendant bank in adopting the methods pursued by it toward the plaintiff bank, and in persistently adhering to them, indicates most convincingly that it was for the purpose of coercing the latter bank into adopting the policy of the Reserve Bank to remit at par. Although the policy may be commercially sound, the plaintiff was entitled to pursue its own method, without being harassed and annoyed because it persisted in so doing.

A preliminary injunction will issue restraining defendant from sending letters to its clients, advising them that they must look to the plaintiff bank for their protection through failure to protest such paper, as demand for payment of may be made upon it on condition that it remit at par.